I, BYRNES, J.
Plaintiff-appellee, Dorothy Houston, filed a rule for possession to evict her stepfather, the defendant-appellant, Joseph Chargois, from the residence located at 3650 Constance St. The reason stated in the notice was: “[OJwner desires possession of property non payment of rent no further rent will be accepted.” The reason stated in the motion was:
[TJhat said premises was rented to and now occupied by DEFENDANT under a verbal [sic] and owner alleges a specific violation of said lease, more particularly OWNER DESIRES POSSESSION OF PROPERTY, NON PAYMENT OF RENT. NO FURTHER RENT WILL BE ACCEPTED.
Defendant filed an answer stating:
I.
Defendant was given the right to live in the subject property in consideration of paying the house note on the subject property.
II.
Additionally plaintiff had defendant advance the cost of the funeral of his late wife and plaintiffs mother as ^further consideration for his remaining in the property for life.
The trial court ruled in favor of the plaintiff and the defendant appealed sus-pensively. We reverse.
It is undisputed that the residence in question belongs to the plaintiff. It is undisputed that the defendant has made payments on a note secured by a mortgage on the property. Plaintiffs counsel, however, contends that there was no agreement that the mortgage payments be treated as rent, and that there was no agreement, no lease of any kind allowing the defendant to lease or remain[1] in the property.
The defendant contends that the oral agreement to allow him to pay the mortgage note in lieu of rent is a month to month lease and that plaintiff did not take the proper procedural steps for terminating such a month to month lease. We find that if there were a month to month lease, then the plaintiff did not take the proper steps to terminate it. The notice of termination shows that it was served on March 31, 1998. LSA-C.C. art. 2686 requires that the notice must be given at least ten days prior to the expiration of the end of the month. The defendant also contends *73 that his continued payment of the mortgage keeps the lease alive.
In effect, plaintiffs position is that she is not required to take such steps because there was no oral lease, no agreement to treat the mortgage payments as equivalent to rent.
At the hearing on the Rule for Possession below, there was a great deal of argument of counsel, but virtually no testimony or documentary evidence. [.■¡Argument of counsel, no matter how artful, is not evidence. When asked by the trial judge what the mortgage payments were, Mr. Chargois responded: “541.00 per month.” When asked by the trial judge, “For how many months?”, Mr. Chargois replied: “Well, it’s since the 80’s, I been [sic] paying it since the 80’s.”
Later in the proceeding the plaintiff testified that:
[The defendant] changed the lock, your Honor. He changed the locks on the door, I had keys to my mom’s house. He changed the locks on the doors.
When the defendant’s attorney argued that the defendant had no place to go if evicted from the house, the plaintiff volunteered without being asked that, “He has a place to stay.”
After an off the record discussion the plaintiff indicated that she wished to make the following statement:
Yes. Your Honor, I listened to Mr. Chargois, my stepfather, he has unnecessarily said lies today. This is supposed to be a place of truth and he has lied. Therefore, you could bring in witnesses that he put me out. He claims that someone broke into the cabinet, the file cabinet, he is lying. Because there was a minister that did the break-in that he gave permission to open the cabinet. And to the house. Why he wished to he about it, there were witnesses there can prove that he gave the minister of the church permission to open the cabinet. Why he wants to lie about it, I don’t know. He has not spoken to me about trying to resume anything since he wanted me to, to the signing he wanted me to sign my rights away. I wouldn’t sign my rights away. This is why we are here where we are now. Because he wanted me to lie. My mom kept insurance policies. She has the records, the numbers of the insurance policies that were made and I’m quite sure the insurance companies can be contacted where they can know what the policy numbers, she has copies of the policy numbers. He did not come out of his pocket, did not have to pay anything for my mom’s funeral. That was not the issue.
14There was no other testimony in the trial court. Thus, there was no testimony denying the existence of or the terms of any oral lease agreement. Therefore, all we have to go on is the notice referring to unspecified rental payments; the motion for possession stating that there was a “verbal”; the defendant’s answer that states that he was “given the right to live in the subject property in consideration of paying the note on the subject property”; and the defendant’s testimony that he had been paying the monthly note on the property for many years at a rate of $541.00 per month, in spite of the fact that he has no ownership interest in the property.
We are a court of record. We are powerless to act on representations of counsel where they are not supported by the record. Based on the foregoing meagre record we can only conclude that the plaintiff failed in her burden of proof that there was no lease.
For the foregoing reasons the judgment of the trial court is reversed.
REVERSED.

. The property had originally been the separate property of the defendant’s late wife. She was the mother of the plaintiff who became the sole owner of the property when her mother died. There is no dispute that the defendant's occupancy began legitimately during his marriage to the plaintiffs late mother. This case involves his right of continued occupancy after his wife's death now that his stepdaughter owns the property.