I!WILLIAMS, Judge.
In this action for damages for personal injuries and property damage arising from an automobile accident, plaintiffs-appellants appeal from a trial court’s judgment finding that they failed to carry their burden of proving that the defendants are responsible for their damages. For the following reasons, we affirm.
*730 FACTS
On the morning of December 16, 1996, seventeen-year-old Crystal Alderman stopped her car at a red light at the intersection of Louisa Street and Highway 80 in Rayville, Louisiana. Crystal’s car was in the northbound lane on Louisa Street and was north of the railroad tracks which run parallel to Highway 80. Accompanying Crystal was her thirteen-year-old brother, Brandon; the two teenagers were on their way to school.
Crystal and Brandon reported that as they waited to turn right onto the highway, an 18-wheel tractor-trailer rig hit them from behind. The Alderman children said that the impact was sufficient to push their car into the near lane of the highway.
After the impact, Crystal drove the car into a parking lot, where Brandon got out of the car to examine the damage. Brandon discovered a dent in the trunklid approximately 35 inches from the ground. The Al-dermans said that this damage was not present before the accident. As he surveyed the damage, Brandon watched the truck drive away from the scene.
A few minutes later, when Crystal realized that the truck was not going to return, she continued to school where she called the police. During that telephone conversation, Crystal described the truck to the police officers as “an eighteen wheeler with a blue tarp headed north.” The police radio dispatcher forwarded the description to the police department in Bastrop, the next town to the north. When ^Rayville Police Chief Eddie Joe Graham arrived at the Aldermans school, Brandon described the cab of the rig as dark blue or green and said that the trailer was a flatbed covered by a blue tarp. According to Brandon, he did not see any logos on the truck or on the tarp. Brandon also told police that the driver was a black man. Crystal stated she did not get a good look at the truck or the driver.
Bastrop police officers soon stopped a dark blue-green Peterbilt tractor pulling a flatbed trailer covered by a blue tarp. This truck was driven by the defendant, Hubert Jackson.[1] Although Jackson admitted that he had driven across Highway 80 on Louisa Street in Rayville that morning, he denied that he had been involved in an accident. The police officers discovered that the front bumper of Jackson’s truck was damaged, and returned Jackson and his truck to Rayville. There, Brandon Alderman identified the truck as the one involved in the accident. Chief Graham said that no other similar trucks were seen in the area that morning. Despite the damage to the truck, Rayville police did not issue Jackson a citation for hit- and-run driving.
Crystal Alderman testified that she began to suffer from severe headaches after the accident. Two weeks later, her parents took her to a chiropractor and within a month, her headaches had stopped. However, at the time of trial, Crystal reported that the headaches had started again. Brandon Alderman had no injuries. The Alderman vehicle, a 1989 BMW 325i, sustained approximately $1500 in damage. The Aldermans did not have collision insurance on their car.
Art Alderman, Crystal and Brandon’s father, sued Jackson and his insurance carrier, U.S.F. & G., because Jackson continued to deny that he was involved in the accident. A bench trial was held on April 27, 1998. In addition to |3the testimony of the Aldermans and Chief Graham, the court heard testimony from Jackson, and from Larry King, an accident reconstruction expert.
At trial, Brandon Alderman testified that he saw the truck driver’s face and identified Jackson as the person he had seen driving the truck. Jackson testified that he had driven through the intersection of Louisa and Highway 80 on the morning of the accident, but stated that he did not hit the Aldermans. Jackson testified that when he came to the intersection, the traffic signal was red and, because he was pulling a flatbed trailer, he stopped his truck on the south side of the railroad tracks so that the truck would not be stopped across the tracks. Jackson also testified that there were no cars in front of him at the light. According to Jackson, the blue *731 tarpaulin covering his trailer bore the inscription “Buffalo Wood” in letters 10 inches wide and 12 inches tall and that the truck also had a Buffalo Wood magnetic sign on the fuel tank that was 18 inches wide and 24 inches long. Jackson testified that the damage to his bumper was caused by an earlier incident where he hooked his bumper with a pole and pulled it away from the truck. He further testified that his truck’s side windows were tinted and were rolled up when he went through Rayville.
King, the accident reconstruction expert, testified that the damage to the Aldermans’ ear was not consistent with a rear-end collision with Jackson’s truck. King said that even a low-speed collision with the loaded truck would have caused much more substantial damage to the BMW than was observed. He testified that the truck’s bumper would have compressed the car’s bumper at least three inches if the truck had contacted the body of the car as was speculated. More significantly, King showed the court that the body damage to the BMW found at 35 inches from the ground could not have been caused by a collision with the truck because the truck’s bumper was only 29 inches high at its highest point |4and the truck had no higher protruding feature. King said that the damage to the truck’s bumper was consistent with Jackson’s testimony that the bumper had been pulled forward and was not evidence that the truck had struck the BMW. King testified that the vehicles bore “no marks, no scrapes, scratches, ... there [were] no rub marks on his bumper, there [were] no scrapes or scratches that I could see in the photographs on the BMW.”
After hearing all of the evidence, the trial court ruled in favor of defendants. Finding that the photographic evidence was irreconcilable with the plaintiffs’ theory, the court ruled that the plaintiffs had failed to carry their burden of proving that Jackson’s truck was the one which struck their car.
Plaintiffs now appeal, urging that the trial judge’s ruling was manifestly erroneous.
DISCUSSION
A defendant is liable for damages occasioned by his fault, and fault includes negligent acts. LSA-C.C. arts. 2315, 2316. However, a plaintiff seeking damages must prove by a preponderance of the evidence that the defendant caused the damages. By a preponderance of evidence means evidence which is of greater weight, or more convincing than that which is offered in opposition to it. It is evidence which, as a whole, shows that the fact or causation sought to be proved is more probable than not. McCartney v. Columbia Heights Nursing Home, Inc., 25,-710 (La.App.2d Cir.3/30/94), 634 So.2d 927, 932.
In the instant case, the trial court found that the plaintiffs failed to carry their burden of proof. The court stated:
[A]s I’m sitting here right now I’ve got balanced scales, I’ve got one saying this is him, I’ve got one saying this ain’t him. I’ve got to see something to tip those scales. And [plaintiff] has the obligation of tipping the scales, that’s your duty to put on that extra whatever it is to convince me that — that one way or the other that I’ve got to lean one way or the other, and in your favor, and right now I don’t have Isthat.... I have problems with the photographic evidence. I’ve had problems with that from the first two photographs. I can’t see how the damage matches up myself, with or without Mr. King’s testimony, you know. I’ve got two eyes and I just cannot see how — there has to be a — I understand your argument that there could be a two inch protrusion and a one inch give in the bumper or a one inch protrusion and a two inch give in the bumper, but to create this indentation with metal then there’s going to be some metal removed from metal, there’s — in my opinion I think that there’s got to be some other explanation.
Plaintiffs argue that this finding was manifestly erroneous in light of the Aldermans’ positive identification of the defendant’s truck as well as the police chiefs testimony that the defendant’s truck was the only similar truck in the area that morning and that the damage on both vehicles was similar.
In Stobart v. State Through DOTD, 617 So.2d 880 (La.1993), the supreme court ex *732 plained the standard of review on appeal when reviewing a trial court’s findings of fact:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly -wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Few cases similar to the instant case appear in the jurisprudence. In Rodriguez v. Cloud, 527 So.2d 66 (La.App. 3d. Cir.1988), the appellate court affirmed a trial court’s decision that the plaintiffs had failed to prove that the defendant’s truck struck their vehicle. Plaintiff in that case presented evidence that a log truck that hit his pickup bore the defendant’s company logo but the defendant showed that other trucks in the area which were not owned or operated by him bore a similar or identical logo. In Pusey v. Davison, 340 So.2d 1073 (La.App. 1st Cir.1976), the appellate court affirmed a similar ruling. Plaintiff was run off of the road by a tanker truck, and plaintiffs co-worker traveling behind him saw the accident. After a four minute delay, plaintiff pursued the tanker and stopped the defendant’s truck. Neither plaintiff nor the co-worker could positively identify the defendant’s truck as the truck that ran the plaintiff off the road. A state trooper investigating the accident noted that the defendant’s truck was not damaged in places where it would have been if it had struck the plaintiffs vehicle, although he opined that the defendant’s truck bore paint scrapings similar to the plaintiffs vehicle. The trooper did not ticket the defendant. The appellate court noted that a collision between a tanker truck and the plaintiffs vehicle under the circumstances alleged by plaintiff would have caused much more damage than was observed.
In the present case, Brandon Alderman positively identified the defendant’s truck as the one that struck the Alderman vehicle. However, in light of the record as a whole, the trial court’s conclusion that the plaintiffs failed to prove that the |7defendant caused their damage was a reasonable one. Most significant is the photographic evidence and the testimony of the Aldermans that the damage to the BMW was not present before the accident. As Mr. King and the trial court observed, the photos show that the damage to the BMW is inconsistent with a rear-end collision with Jackson’s loaded tractor-trailer rig. The front of Jackson’s truck has no features which could have caused the corresponding damage to the Aldermans’ car. The evidence also shows that the damage to the car, if caused by Jackson’s truck, would have been much more extensive even in a low-speed collision. If the truck had struck the car and caused the observable damage, other parts of the car would have been dented, scarred or crushed. Chief Graham’s ob *733 servation that the damage to Jackson’s truck was consistent with the damage to the car is discounted by his cursory examination of the damage, by the photographic evidence and by the fact that Jackson was not given a ticket.
Jackson’s testimony about the markings on his truck further undermine the eyewitness identification. Although Brandon testified at trial that he recognized Jackson’s face through the truck’s tinted windows, he did not observe the nearly 1-foot-square letters on the side of the truck nor any other logo.
In short, the trial court’s decision to reject the plaintiffs’ allegations against the defendants was reasonable, and plaintiffs have not shown that the court’s ruling was clearly wrong.
DECREE
For the above assigned reasons, the judgment of the trial court rejecting plaintiffs’ demands is affirmed. Costs of this appeal are assessed to plaintiffs.
AFFIRMED.

. Although some of the documents in the record refer to the defendant/driver as Hubert Jacks, testimony at trial disclosed that his correct name is Hubert Jackson.